# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**LORRIE LANNETTE HENLEY**                                                              **PLAINTIFF**

**V.**                                       **NO. 1:18CV00097 KGB/PSH**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**[1]                                 **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Lorrie Lannette Henley, applied for disability benefits on August 27, 2015, alleging a disability onset date of April 1, 2012.[2] (Tr. at 13). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Henley's claim. (Tr. at 24). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Henley has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Ms. Henley amended her onset date to August 31, 2015. (Tr. at 13).

## II. The Commissioner's Decision:

The ALJ found that Ms. Henley had not engaged in substantial gainful activity since the amended alleged onset date of August 31, 2015. (Tr. at 16). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Henley had the following severe impairments: degenerative disc disease, anemia, seizure disorder, depressive disorder, bipolar disorder, generalized anxiety disorder, and chronic pain syndrome. *Id.*

The ALJ found that Ms. Henley's impairment did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Ms. Henley had the residual functional capacity ("RFC") to perform work at the light level, with limitations. (Tr. at 18). She should be allowed to sit or stand at will while performing work duties. *Id*. She could occasionally climb ramps and stairs. *Id.* She could never climb ladders, ropes, or scaffolds. *Id.* She could occasionally balance, stoop, kneel, crouch, and crawl. *Id*. She could never work at unprotected heights. *Id*. She could never be exposed to workplace hazards. *Id*. She could perform simple, routine, repetitive tasks. *Id*. She must have supervision that is simple, direct, and concrete. *Id*. She would be limited to work that can be learned in 30 days or less, and that is classified as unskilled work in the *Dictionary of Occupational Titles* ("DOT"). *Id*.

The ALJ next found that Ms. Henley was unable to perform any of her past relevant work. (Tr. at 22). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Henley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as storage facility clerk, with 50,000 jobs available in the national economy, and parking enforcement officer, with 8,000 positions available in the national economy. (Tr. at 24). Therefore, the ALJ found that Ms. Henley was not disabled. *Id*.

## III. Discussion:

   A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

   B. Ms. Henley's Arguments on Appeal

Ms. Henley contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not give proper weight to the opinions of her treating mental health providers, and that the ALJ did not resolve an alleged discrepancy between the VE testimony and the DOT at Step Five. After reviewing the record as a whole, the Court concludes

that the ALJ did not err in denying benefits.

Ms. Henley treated her various mental health problems from a young age. She was in abusive relationships, including being together off and on with her ex-husband during the relevant time-period. (Tr. at 63, 97, 672, 702, 811, 867, 872, 873, 922, 1050-52, 1137). She was diagnosed with mood disorder, anxiety, depression and adult psychological abuse. (Tr. at 47, 1053). She attempted to take her life more than once. (Tr. at 95, 454, 636-638). She had controlled substance addictions, which appeared to be in remission at the time of the hearing. (Tr. at 101-102). Ms. Henley was arrested for stealing food from Walmart (Tr. at 873) and charged with possession of Valium while in jail (Tr. at 63-64).

However, some factors weigh against a finding of disability as a result of mental illness. On most occasions when Ms. Henley sought treatment, she had grossly normal mental status examinations. (Tr. at 37-67, 471, 668-673, 704, 813, 901, 1032). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). She was not always compliant with taking her medications or showing up at appointments. (Tr. at 34-40, 67, 446, 672, 869, 922, 1050, 1135, 1143). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of her alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). She often demonstrated a cooperative nature and a willingness to work on therapy goals (non-compliance proved to be detrimental). (Tr. at 41-46, 461-471, 513-518, 622-632, 859-862, 1020-1036). Ms. Henley generally improved over the relevant time-period, especially when properly taking her medications. (Tr. at 871, 1022-1032, 1036-1048, 1050-1052, 1133). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). By February 2018, Ms. Henley

4

had a positive mood and outlook. (Tr. at 46).

Ms. Henley did have some situational stressors that caused deterioration, like regularly trying to reunite with her abusive ex-husband who was in prison, and who was also her partner in criminal activity. (Tr. at 811, 867-873, 922, 1050-1052, 1137). That caused a great deal of stress to Ms. Henley, and that stress was shown to cause seizures. (Tr. at 581-590, 671, 702, 810, 901). She went to the ER twice for seizures, but objective testing did not reveal abnormalities. (Tr. at 593, 662, 672, 702). Moreover, her husband reported that she had not taken seizure medications in the full year prior to the seizures. (Tr. at 672).

Ms. Henley was able to perform activities of daily living including doing some chores, fixing meals, driving, shopping in stores, attending support groups and church, and visiting with friends. (Tr. at 344-347, 866). Although Ms. Henley testified that she could hardly get out of bed some days (Tr. at 97), the record shows she could perform functions independently, which weighs against her assertions of disabling conditions. (Tr. at 815).

Ms. Henley argues that because the ALJ did not discuss the "opinions" of Joanna Ronnau, LPC, Kelda Iness, LAC, LAMFT, and Ruth Ann Carpenter, LCSW, he failed to fully evaluate the medical record as a whole.[3] This argument fails for a few reasons. First, while these women treated Ms. Henley with some regularity, they are not "acceptable medical sources." See 20 C.F.R. § 404.1513(a), (d)(1). They are considered "other" medical sources who may present evidence of

---

[3] Ms. Henley characterizes office visit notes from Ms. Ronnau, Ms. Iness, and Ms. Carpenter as "opinions," but they are not formal opinions such as those typically offered by treating physicians or consultative examiners in a report, form, or letter. Ms. Iness did write a one-page note, dated August 11, 2017, stating that Ms. Henley was unable to receive proper medical treatment for her mental problems due to changing providers. (Tr. at 1132). This is rebutted by Ms. Henley's improvement in condition after that date. (Tr. at 46).

5

the severity of the claimant's impairment and the effect of the impairments on the claimant's ability to work. *Id*. However, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record. *See Raney v. Barnhart*, 396 F.3d 1007, 1010(8th Cir. 2005). Some weight may be given to non-acceptable medical sources, especially since managed health care often favors treatment by these sources rather than by medical doctors. But great weight should be assigned only when those opinions are consistent with the record as a whole.

The office notes from visits with all three women were mixed, showing severe conditions at times but improvement at other times (with progress made by early 2018). (Tr. at 33-67, 859-875, 1022-1032, 1132-1143). The providers also noted on occasion that Ms. Henley was noncompliant with treatment. *Id.* They found that Ms. Henley felt much better when she took certain medications*. Id*. They observed that Ms. Henley suffered more when her home life was stressful (acute exacerbations rather than chronic deterioration). *Id*. Even Ms. Henley, in her brief, noted positive reports from Kim Williams, LMSW, showing good improvement in late 2016. (Tr. at 1038-1045).

Ms. Henley appeared for a consultative psychological examination with Samuel Hester, Ph.D., in June 2014. (Tr. at 445-452). Dr. Hester noted good communication skills, logical thought-processes, and appropriate affect, although Ms. Henley was somewhat depressed and anxious. (Tr. at 447-448). After a thorough examination, Dr. Hester found that Ms. Henley could communicate effectively, cope with a job's mental demands, sustain concentration, and complete work tasks in an acceptable time frame. (Tr. at 450-451).

Dr. Hester examined Ms. Henley again in December 2015. (Tr. at 810-817). He found at that time that Ms. Henley was cooperative, had a good attitude, had appropriate affect, and could

communicate effectively. (Tr. at 812-813). Dr. Hester found that Ms. Henley could perform necessary mental work functions. (Tr. at 816). The ALJ gave Dr. Hester's two opinions limited weight because he believed Ms. Henley was more compromised mentally than those opinions suggested. (Tr. at 21). In that respect, the ALJ credited Ms. Henley's report of symptoms.

One state-agency psychological consultant reviewed the records and opined that Ms. Henley could perform simple work tasks. (Tr. at 152). A second consultant limited her to unskilled work. (Tr. at 204). The ALJ gave these opinions great weight; they were entirely consistent with the medical record. (Tr. at 22). Ms. Henley thinks her therapists' notes should have been given more weight. But simple office notes, especially when they do not overwhelmingly point to disability, are not on par with formal medical and psychiatric opinions. The ALJ properly evaluated the medical record.

Ms. Henley also suffered from low back pain. Objective imaging showed degenerative disc disease of the lumbar spine. (Tr. at 660-665, 674, 822-831). X-rays showed mild to moderate conditions, with some disc desiccation and facet arthropathy. *Id*. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Ms. Henley had a mid-sacral fracture. (Tr. at 660-665, 674, 822-831). However, in November 2015, Ms. Henley had full range of motion in her hips, good coordination and balance, and a normal gait. (Tr. at 837-838). She had negative straight-leg raises. *Id*. Her doctor suggested she avoid bedrest for more than three days and continue normal activities. *Id*. Ms. Henley showed normal gait again in January 2016 and January 2017, with good strength and no muscle spasms. (Tr. at 831-832, 978). Ms. Henley claimed that medication and physical therapy did not resolve her pain, but in early-to-mid 2017, she told her doctor that medication managed

7

her pain and improved her quality of life (Tr. at 1121-1126). Epidural steroid injections and medial branch blocks provided relief and Ms. Henley said she was able to perform daily activities. *Id*., (Tr. at 940-958).

Ms. Henley's second argument centers around the VE's testimony. When the ALJ asked about a claimant who would need to sit or stand at will on the job, the VE identified as available the two jobs listed above. (Tr. at 107-108). Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *see* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000). In this case, the ALJ specifically asked about any inconsistency between the sit-stand option and the DOT description for those jobs. (Tr. at 109-110). The VE responded that his experience, Master's degree, and observance of those occupations over 25 years informed his opinion that Ms. Henley could perform those jobs with a sit-stand option. *Id*. As precedent provides, an ALJ may rely on VE testimony about common workplace practices based upon the expert's knowledge and experience. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (citation omitted). Ms. Henley's attorney asked the VE if employers would "accommodate" the sit-stand option, and the VE said he had not asked "every single employer in the United States."[4] (Tr. at 111). Ms. Henley's attorney argues that this posed a conflict between

---

[4] Ms. Henley argues that the sit-stand option in the RFC was an "accommodation" not necessarily allowed by all of the employers in the jobs identified. (Doc. No. 10 at 7-8). It makes no difference that a particular workplace modification might be called an "accommodation" or even "a reasonable accommodation." *Higgins v. Commissioner, SSA*, 898 F.3d 793, 793-797 (8th Cir. 2018)("the phrase is immaterial"). What matters is the job function as it actually exists in the working world, whether the accommodation has become prevalent, and whether it is actually offered by employers. *Id*. As shown above, the VE testified that based on his experience and expertise, the sit-stand option would be allowed

8

the VE's testimony and the DOT, which the ALJ did not resolve. In this case, the ALJ thoroughly questioned the VE about the sit-stand option, the VE provided ample justification for his testimony, and then, the ALJ fully discussed this issue in his opinion. (Tr. at 24). The ALJ's decision was not defective at Step Five.[5]

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Henley was not disabled. The ALJ gave proper weight to the medical opinions and he properly relied upon the well-supported testimony of the VE. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 15th day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

in the jobs he identified.

[5] Moreover, the VE identified 58,000 positions in total in the national economy that Ms. Henley could perform (between the two occupations identified by the VE). The Eighth Circuit has held that "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).